TIMOTHY C. FOX
Montana Attorney General
MELISSA SCHLICHTING
Deputy Attorney General
JEREMIAH WEINER
Assistant Attorney General
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
Telephone: (406) 444-2026
Fax: (406) 444-3549
Email: mschlichting@mt.gov
Email: jweiner2@mt.gov

LOCAL COUNSEL FOR STATE OF WISCONSIN

**FILED**

FEB 0 8 2018

Clerk, U.S. District Court
District Of Montana
Helena

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| WILDEARTH GUARDIANS,<br><br>Plaintiff,<br>and<br><br>CENTER FOR BIOLOGICAL DIVERSITY,<br><br>Consolidated Plaintiff,<br>v.<br><br>UNITED STATES FISH & WILDLIFE SERVICE, et al.,<br><br>Defendants,<br>and<br><br>MONTANA TRAPPERS ASSOC., NATIONAL TRAPPERS ASSOC., and FUR INFORMATION COUNCIL OF AMERICA,<br><br>Defendant-Intervenors. | Lead Case No. CV-16-65-M-DWM<br><br>Member Case No. CV-17-99-M-DWM<br><br>**UNOPPOSED MOTION FOR LEAVE TO FILE A BRIEF AS AMICI CURIAE IN SUPPORT OF FEDERAL DEFENDANTS** |

Pursuant to Montana District Court Local Rule 7.5(b), the States of Wisconsin, Alaska, Michigan, Montana, and Wyoming (hereinafter called the Coalition States, or States), by undersigned counsel, respectfully move this Court for leave to file a brief *amici curiae* in support of the Federal Defendants in this consolidated case. The attorneys for the States have contacted the Plaintiffs, Federal Defendants, and Defendant-Intervenors, and none oppose the States' participation as *amici*.[1]

In consideration of this Court's case management order of September 26, 2017 (Dkt. 73), the States propose filing a single brief of no more than 5,000 words on or before March 30, 2018, seven days after the opening briefs of Federal Defendants and Intervenors.[2]

## INTEREST OF AMICI CURIAE

This case involves challenges to the Federal Defendants' decision to maintain in its current form the CITES Furbearer Export Program

---

[1] Federal Defendants take no position on the States' participation, but affirmed the captioning of this motion as "unopposed." Plaintiffs do not oppose the States' participation, on the conditions that *amici* do not submit extra-record evidence, and that Plaintiffs may seek leave of the Court for additional time or words to respond to *amici's* arguments.

[2] This timeline is adopted from the procedure governing amicus briefs in the United States Courts of Appeals. *See* Fed. R. App. P. 29(a)(6).

(the Export Program). The Export Program "is a mechanism to provide for an efficient export permitting process" for pelts or other specimens from five species: bobcat, river otter, gray wolf, Canada lynx, and brown bear. (*See* Dkt. 56-3:65.) But as the U.S. Fish & Wildlife Service (Service) reiterated throughout its Final Environmental Assessment for the Export Program, neither the Service nor any other federal entity actually oversees harvest methods or tagging of any of the species at issue. (*See, e.g.*, Dkt. 56-3:8.) The Export Program, therefore, is not a program of direct wildlife management; that significant responsibility "remains with the States and Tribes." (Dkt. 56-3:9, 15; *see also* Dkt. 79:9 - 10 (Federal Defendants' response in opposition to motion to dismiss, noting that "the Service's administration of the Furbearer Program does not control or direct state and tribal hunting and trapping regimes").)

So, while Plaintiffs' allegations directly challenge the reasonableness of the Federal Defendants' decision-making process in maintaining the Export Program, it is the States and their citizens who would most immediately feel the impacts of Plaintiffs' requested relief, which includes enjoining certain aspects of the current Export Program.

For the Coalition States, then, Plaintiffs' challenges implicate at least three unique, substantial, and interconnected state interests: (1) protecting state sovereignty and individual rights related to trapping and hunting; (2) reaffirming the capability and accountability of state wildlife managers; and (3) preserving economic and cultural benefits derived from trapping and hunting.

In the proposed brief, the States would focus on these interests as demonstrating additional support for the reasonableness of the Federal Defendants' decision to maintain the Export Program in its current form.[3] The following discussion briefly outlines the substantial state interests at issue.

### A. Protecting state sovereignty and individuals' rights

As sovereigns, each of the Coalition States exercises legal authority over wildlife within its jurisdiction. In Wisconsin, for example, the state is vested with "legal title to, and custody and

---

[3] Plaintiffs also raise a claim challenging the 2012 Biological Opinion regarding the effects of bobcat trapping on lynx, as well as the Incidental Take Statement incorporated therein. (*See* Dkt. 62:15, 20 - 23.) To the extent the Biological Opinion and the Incidental Take Statement are properly on review before this Court, the Coalition States also support Federal Defendants' decisions therein, and seek to address the merits of those claims as they pertain to the state interests presented.

protection of, all wild animals within . . . the state for the purposes of regulating the enjoyment, use, disposition, and conservation of these wild animals." Wis. Stat. § 29.011(1). Comparable provisions govern state authority over wildlife in each of the Coalition States. *See, e.g.*, Alaska Const. art. VIII, § 4 (state natural resources must be "utilized, developed, and maintained on the sustained yield principle, subject to preferences among beneficial uses"); Mich. Comp. Laws §§ 324.40105 (ownership of wild animals vested in people of the state), 324.40107 (state management of wild animals); Mont. Code Ann. § 87-1-201(1) - (3) (state supervision of wildlife); Wyo. Stat. Ann. § 23-1-103 (West 2017) (all wildlife in Wyoming is property of the state).

In addition to state authority and obligations over wildlife, some states provide separate protections for the individual right to hunt, fish, and trap, both in statutes and constitutions. *See, e.g.*, Wis. Const. art. I, § 26 (guaranteeing right to "fish, hunt, trap, and take game subject only to reasonable restrictions as prescribed by law"); Alaska Const. art. VIII, § 3 (reserving fish, wildlife, and waters "to the people for common use"); Mont. Const. art. 9, § 7 ("The opportunity to harvest wild fish and wild game animals is a heritage that shall forever be preserved to the

individual citizens of the state . . . ."); *see also* Mich. Comp. Laws
§ 324.40113a(3) (recognizing that "citizens of [Michigan] have a right to
hunt, fish, and take game," subject to restrictions prescribed by law).

These laws demonstrate that the Coalition States have
substantial, sovereign interests in preserving their authority over
wildlife management, and protecting individual rights in hunting and
trapping of the species at issue.

## B. Supporting local, science-based wildlife management

The Coalition States also have substantial interests in reaffirming
the primary role of state natural resource agencies in sustainably
managing wildlife populations. (*See, e.g.*, Dkt. 56-3:55 (EA, noting
States' and Tribes' "professionally run management and research
programs for these species").) These state agencies provide
indispensable, boots-on-the-ground research and analysis about wildlife
populations.[4] *See e.g.*, Mich. Comp. Laws § 324.40113a(2) (state natural
resource commission "shall, to the greatest extent practicable, utilize

---

[4] The various Coalition States host different mixes of CITES-covered species. Wisconsin and Michigan have healthy, sustainable populations of both bobcats and river otters. Wyoming and Montana host thriving bobcat populations. Alaska manages healthy populations of four of the five species at issue in the Export Program (all species except bobcat).

principles of sound scientific management in making decisions regarding the taking of game"). The data that states collect not only allow the states to engage in science-based decision-making, but also provide federal decision-makers with meaningful, localized information about wildlife populations. That information, in turn, provides the bases for myriad federal decisions, including those relating to the Export Program.

For example, state wildlife management agencies are responsible for collecting and compiling much of the data necessary to make the CITES-required findings of legal acquisition and non-detriment. *See, e.g.*, 50 C.F.R. § 23.61(b) - (c), (f) (listing relevant considerations; providing that Service relies on "best available biological information" in making non-detriment determination). The Service's regulations recognize the importance and reliability of these State managers, noting that State management programs are "*designed to monitor and protect CITES furbearers from over-harvest,*" and that State managers provide "necessary information" to allow the Service to fulfill its CITES obligations. *See* 50 C.F.R. § 23.69(b) (emphasis added).

As the regulations illustrate, state wildlife managers have strong incentives to provide accurate, meaningful data about CITES-covered populations. *See* 50 C.F.R. § 23.69(b) - (c). Likewise, for purposes of this litigation, the Coalition States have a substantial interest in demonstrating that the state data reasonably support the Federal Defendants' decision to maintain the Export Program in its current form.

### C. Preserving economic and cultural benefits of trapping and hunting

Finally, in each of the Coalition States, trapping and hunting are both economically and culturally significant. Wisconsin, for example, is a national leader in fur harvest and export. Of the 150,000 trappers licensed annually in the United States, Wisconsin licenses over ten percent (20,000 trappers). For Wisconsin and each of the Coalition States, these licensing fees support management and conservation efforts, including for CITES-covered species. Further, trappers and hunters contribute millions of dollars annually to local economies through expenditures associated with the activities (e.g., travel, equipment, outfitting, and lodging), as well as through the sale of pelts to local fur buyers.

The resale of pelts is a particularly important interest for Wisconsin, which is home to the United States' hub of the North American Fur Auction. That auction is the source of the majority of pelts exported from the United States—including an estimated 50,000 bobcat pelts and 70,000 river otter pelts. An injunction like that contemplated in Plaintiffs' requested relief—for example, prohibiting export of bobcat pelts from certain states—would deprive states and their citizens of substantial revenue derived from export of the covered species.

Relatedly, trapping and hunting are culturally important for individuals, families, and communities across the Coalition States. *See, e.g.*, Mich. Comp. Laws § 324.40113a(3) (declaration that hunting, fishing, and taking of game "are a valued part of the cultural heritage of this state," as well as "an important part in the state's economy and in the conservation, preservation, and management of the state's natural resources"). These activities provide food, income, clothing, recreation, and cultural continuity for tens of thousands of hunters and trappers.

Economic and cultural interests, therefore, provide further support for the Coalition States' participation in the current litigation.

## DESIRABILITY OF A BRIEF FROM THE COALITION STATES

A brief from the Coalition States is desirable to adequately address how the interests discussed above support the reasonableness of the Federal Defendants' decision to maintain the Export Program. Although existing parties will unquestionably, and skillfully, defend the challenged decisions, the States' unique interests likely would not be addressed adequately by any party defendant.

The Federal Defendants, for example, will likely focus on the propriety of their decision-making processes as a whole, and how their decisions complied with the APA, ESA, and NEPA. The States, however, would present a narrower supporting argument that, *in light of the substantial state interests implicated*, the Federal Defendants acted reasonably in evaluating alternatives and sustaining the Export Program in its current form. Allowing a brief from the States will therefore leave the Federal Defendants free to focus more on the nuances of their decision-making, while at the same time recognizing the States' strong incentive to demonstrate why, from a state perspective, the Federal Defendants acted reasonably.

Defendant-Intervenors also likely would not adequately address the interests of the sovereign States. While Defendant-Intervenors will likely focus their arguments on the economic reasonableness of maintaining the Export Program in its current form, their arguments will necessarily be limited to private interests, rather than those of a state charged with the various aspects of public wildlife management.

Given these distinct interests, a brief from the Coalition States is desirable and necessary to present the unique and substantial state interests in maintaining the Export Program. The States therefore ask that the Court grant the instant motion, allowing the States to file a single brief as *amici curiae*, limited to 5,000 words, on or before March 30, 2018.

Respectfully submitted this 8th day of February, 2018.

>TIMOTHY C. FOX
>Montana Attorney General
>215 North Sanders
>P.O. Box 201401
>Helena, MT 59620-1401
>
>By: /s/ Melissa Schlichting
>MELISSA SCHLICHTING
>Deputy Attorney General

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this date, an accurate copy of the foregoing document was served on the following persons by the following means:

    __1__   Hand Delivery
    __2-8__  Mail

1. Clerk, U.S. District Court

2. Travis J. Annatoyn
   US Dept of Justice
   601 D. St. NW, Rm. 3708
   Washington, DC 20004

3. Kristine Marie Akland
   Akland Law Firm, PLLC
   P.O. Box 7274
   Missoula, MT 59807

4. Gary R. Leistico
   Rinke Noonan
   P.O. Box 1497
   St. Cloud, MN 56302-1497

5. Sarah Uhlemann
   Tanya Sanerib
   Center for Biological Diversity
   2400 NW 80th St, Ste 146
   Seattle, WA 98117

6. W. Carl Mendenall
   Worden Thane
   321 West Broadway, Ste 300
   Missoula, MT 59802-4116

7. Ira T. Kasdan
   Kelly Drye & Warren LLP
   Washington Harbour, Ste 400
   3050 K St NW
   Washington, DC 20007

8. Kathleen L. DeSoto
   Garlington Lohn & Robinson PLLP
   P.O. Box 7909
   Missoula, MT 59807-7909

DATED: February 8, 2018

*/s/ Melissa Schlichting*
MELISSA SCHLICHTING
Deputy Attorney General

UNOPPOSED MOTION FOR LEAVE TO FILE A BRIEF AS
AMICI CURIAE IN SUPPORT OF FEDERAL DEFENDANTS
PAGE 12